IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3026-FL

| | | |
|---|---|---|
| TERRY A. NORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA; | ) | |
| TRACY JOHNS; UNIT MANAGER | ) | |
| SCARATINO; CASE MANAGER | ) | |
| BREWER; AND UNIT COUNSELOR | ) | |
| GREENE, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the third motion to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(1) (DE # 40) filed by defendant the United States of America (the "United

States"). Also before the court is plaintiff's motion to amend (DE # 43). Plaintiff did not respond

to defendant's motion, and defendant did not respond to plaintiff's motion. In this posture, these

matters are ripe for adjudication. For the foregoing reasons, the court denies plaintiff's motion to

amend, but grants the United States' motion to dismiss.

**STATEMENT OF THE CASE**

The court here incorporates the below portion of the statement of facts as set forth in its July

3, 2012, order:

> On March 5, 2010, plaintiff filed this action pursuant to Bivens v. Six
> Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S.
> 388 (1971), and pursuant to the Federal Torts Claim Act ("FTCA"),
> 28 U.S.C. § 2672, *et seq.* Plaintiff alleges that defendants [Tracy

Johns ("Johns"), unit manager Scaratino ("Scaratino"), case manger Brewer ("Brewer"), and unit counselor Greene ("Greene")] violated his rights pursuant to the Eighth Amendment to the United States Constitution because they failed to protect him from an assault from a fellow inmate who was known to be violent. Plaintiff also alleges a negligence claim pursuant to the FTCA.

Defendants filed their first motion to dismiss, or in the alternative, for summary judgment[1] on October 20, 2010, arguing, inter alia, that plaintiff's action should be dismissed because he failed to exhaust his administrative remedies for his Bivens action. Defendants also argued that plaintiff's FTCA claim should be dismissed because he failed to state a claim upon which relief may be granted. On August 26, 2011, the court denied without prejudice defendants' motion as to plaintiff's Bivens claim, finding that there was a genuine issue of material fact with regard to whether plaintiff exhausted his administrative remedies prior to filing this action. The court also denied without prejudice defendants' motion with respect to plaintiff's FTCA claim on the grounds that defendants filed their motion before plaintiff had the opportunity to engage in any discovery. On September 2, 2011, the Clerk of Court issued an initial order in this action.[2]

On September 8, 2011, defendants filed their second motion to dismiss, or in the alternative, motion for summary judgment, arguing that plaintiff's FTCA claim is barred by the discretionary function exception. Defendants also, once again, argue that plaintiff's Bivens claim should be dismissed for failure to exhaust administrative remedies. As part of their motion, defendants request a stay of discovery until after the court rules upon their second motion to dismiss. The matter was fully briefed. Additionally, plaintiff filed a motion for a conference, a motion to compel, and a motion to amend his complaint. Defendants did not respond to plaintiff's motions.

In its July 3, 2012, order, the court granted plaintiff's motion to amend, denied without prejudice plaintiff's motion to compel, denied plaintiff's motion for a conference, and denied

---

[1] Because defendants attached materials that were outside of the pleadings, the court construed their motion as a motion for summary judgment.

[2] The court notes that a case management order was not entered.

2

defendants' motion to stay discovery. The court denied without prejudice the United States' motion

to dismiss plaintiff's FTCA claim. The court, however, granted the remaining defendants' motion

for summary judgment as to plaintiff's Bivens claim on the grounds that he failed to exhaust his

administrative remedies prior to filing this action. Accordingly, defendants Johns, Scaratino,

Brewer, and Greene were dismissed from this action, leaving the United States as the sole remaining

defendant. As part of its order, the court issued a case management order.

On September 19, 2012, the United States moved to dismiss plaintiff's action arguing that

it is entitled to sovereign immunity. Plaintiff subsequently filed a motion to amend his complaint,

but did not respond to the motion to dismiss.

## STATEMENT OF FACTS

Viewing the facts in the light most favorable to plaintiff, plaintiff makes the following

allegations. At all times relevant to the complaint, plaintiff was incarcerated in Granville A Unit at

the Low Security Correctional Institution ("LSCI") in Butner, North Carolina. Compl. ¶ 13. On

November 13, 2008, inmate Harvey approached plaintiff and stated: "I'm gonna kill you before

Christmas." Id. Plaintiff states that he immediately sought the protection of staff, but that staff

"ignored the threat of bodily harm." Id.

Greene, a correctional counselor, admits that he discussed with plaintiff his difficulties with

inmate Harvey on both November 5, 2008, and November 12, 2008. Greene Decl.[3] ¶¶ 4-5. On

November 5, 2008, Greene counseled plaintiff about his attempts to bring racial issues into the unit.

Id. ¶ 4. On November 12, 2008, Greene again told plaintiff that his "attempt to turn the white

---

[3] Greene's affidavit is attached to the memorandum in support of defendants' October 20, 2010, motion to dismiss.

3

inmates against the black inmates needed to stop." Id. ¶ 5. Greene also told plaintiff that inmate Harvey had previously complained that plaintiff was spreading racial rumors about inmate Harvey, and that plaintiff was trying to get inmate Harvey fired as a unit orderly. Id. Greene instructed plaintiff that his behavior needed to end. Id. Plaintiff responded that he would stop his behavior and that there were no problems between he and inmate Harvey. Id. ¶¶ 5-6.

On November 13, 2008, Scaratino witnessed plaintiff in a verbal disagreement with inmate Harvey. Scaratino Aff.[4] ¶ 4. Scarantino then called plaintiff into his office to discuss the situation. Id. Plaintiff told Scarantino that he was just trying to speak with inmate Harvey and that there would be no further incidents between the two inmates. Id. After plaintiff left his office, Scarantino spoke with inmate Harvey about the incident. Id. ¶ 5. Inmate Harvey also assured Scarantino that no further incidents would occur. Id.

A few minutes after leaving Scarantino's office, the inmates were involved in a physical altercation. Id. ¶ 7. Plaintiff states that "[a]t no time during the assault did staff make any attempt to stop (staff was physically present and witnessed the assault) the assault until plaintiff was bleeding, with blood all over the floor and walls, and plaintiff. Then, and only then, did staff intervene to stop the assault." Compl. ¶ 24.

After the assault, plaintiff was taken to medical services and treated for his injuries. Id. ¶ 16. Plaintiff then was placed in the Special Housing Unit ("SHU") for two weeks. Id. Upon his release from the SHU, plaintiff was returned to LSCI. Id. "Plaintiff was later transferred to the Federal Medical Center ("FMC") where he continues to undergo painful treatment for his injuries sustained

---

[4] Scarantino's affidavit is attached to the memorandum in support of defendants' October 20, 2010, motion to dismiss.

4

during the assault, and where he is currently awaiting surgery to repair the damage done to his nose during the assault." Id. ¶ 17. Finally, plaintiff alleges that inmate Harvey has a "documented history of serious mental health problems (Paranoid Schizophrenic), requiring treatment and hospitalization. The assailant was housed at the high security mental health unit at FMC Butner, prior to being transferred to LSCI Butner-Low. He also has a documented history of prior assaults." Id. ¶ 20. Plaintiff states that he continues to suffer nightmares and an inherent fear of "mental health" inmates. Id. ¶ 31.

## DISCUSSION

A. Motion to Amend

Plaintiff requires leave of court to amend his complaint. Fed.R.Civ.P. 15(a)(1). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.' " Foman v. Davis, 371 U.S. 178, 182 (1962).

The court previously allowed plaintiff to amend his complaint on two occasions. Plaintiff's third motion to amend comes subsequent to the United States' motion to dismiss and approximately two and one half years after he filed the action. Based upon the foregoing, the court finds that allowing the motion to amend would unnecessarily delay the adjudication of this action and would cause the United States undue prejudice. See McPherson v. McCabe, No. 5:04-CT-990-FL, 2007

5

WL 4246582, at *2 (E.D.N.C. Apr. 10, 2007), aff'd, 241 F. App'x 963 (4th Cir. 2007). Thus, plaintiff's motion to amend is DENIED.[5]

B. Motion to Dismiss

1. Standard of Review

Under Rule 12(b)(1), the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When the Rule 12(b)(1) motion attacks the complaint as failing to state facts upon which subject matter jurisdiction may be based, the facts in the complaint are assumed to be true and the plaintiff is afforded the same protections he or she would receive under a Rule 12(b)(6) motion. Adams, 697 F.2d at 1219. The Rule 12(b)(1) motion may attack alternatively the existence of subject matter jurisdiction in fact, apart from the complaint. Id. This type of attack is used when a court's limited jurisdiction precludes hearing the case brought. Id. Because the court's power to hear the case is at issue in a Rule 12(b)(1) motion, the court is free to weigh the evidence to determine the existence of jurisdiction. Id.

---

[5] The court notes that plaintiff attempts to re-assert his Bivens claims which the court dismissed, on July 3, 2012, for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). Plaintiff now argues that his correctional counselor prevented him complying with § 1997e(a)'s exhaustion requirement because his counselor refused to provide him with a BP-11 form after his BP-10 appeal was rejected. The record reflects that prison officials rejected plaintiff's final BP-10 grievance on March 10, 2010, which was subsequent to the filing of this action on March 5, 2010. Thus, plaintiff was in the process of exhausting his administrative remedies when he filed this action, and could not have exhausted his administrative remedies prior to filing this action. See Hayes v. Stanley, No. 06-6475, 2006 WL 3147498, at *1, n.1 (4th Cir. Oct. 31, 2006) (finding that an inmate does not comply with the Prison Litigation Reform Act's exhaustion requirement by exhausting his remedies during the course of litigation); Johnson v. Jones, 340 F. 3d 624, 627-28 (8th Cir. 2003) ("[P]ermitting exhaustion *pendente lite* undermines the objectives of section 1997e(a) . . . .").

6

2.    Analysis

The United States contends that this court lacks subject matter jurisdiction over plaintiff's FTCA claim. The FTCA is a waiver of the United States' sovereign immunity, which permits a claimant to sue the United States for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 2675(a); United States v. Kubrick, 444 U.S. 111, 116 n.4 (1979). Courts should not extend the waiver of the United States' sovereign immunity beyond that which Congress intended. Kubrick, 444 U.S. at 118. Plaintiff must "show that an unequivocal waiver of sovereign immunity exists . . . ." Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). "If the plaintiff fails to meet this burden, then the claim must be dismissed." Id.

The United States argues that it has not waived its sovereign immunity in this case because the prison officials' alleged conduct falls within the discretionary function exception to the FTCA's waiver of immunity. Pursuant to the discretionary function exception, defendant is not liable for "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). There is a two-part test used to determine whether the discretionary function exception bars a particular claim. United States v. Gaubert, 499 U.S. 315, 322 (1991). First, the "exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.' " Id. (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). Second, if the alleged conduct involves discretionary judgment, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322-23. "Because the purpose of the

7

exception is to prevent judicial second-guessing of the legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, [] when properly construed, the exception protects only governmental actions and decisions based on consideration of public policy." Id. at 323.

a.      Failure to Protect from Assault

Plaintiff alleges that prison officials failed to protect him from an assault from inmate Harvey. As for the first part of the discretionary function test, the court finds that there is a statute that requires the Federal Bureau of Prisons ("BOP") to provide for the "protection" and "safekeeping" of its inmates. 18 U.S.C. § 4042(a)(2) and (a)(3). Although federal regulations require the BOP to "control inmate behavior" and "take disciplinary action" when necessary, there is no statute that requires the BOP to take a particular course of action to ensure an inmate's safety from attack by another inmate. See Byrd v. United States, No. 1:09CV1208, 2010 WL 4922519, *5 (E.D. Va. Nov. 29, 2010) (citing 28 C.F.R. § 541.1; 28 C.F.R. § 541.22). Rather, § 4042 leaves the implementation of providing for the protection and safekeeping of its inmates to the BOP. Id.; Donaldson v. United States, 281 F. App'x 75, 77 (3d Cir. June 2, 2008). Because BOP employees are allowed discretion in how they provide for the protection and safekeeping of its inmates, the first prong of the discretionary function test is satisfied.

The court next turns to the second prong of the discretionary function test--whether the judgment is of the kind that the discretionary function exception was designed to shield. Courts have held that the decision of how to protect an inmate from an assault from another inmate is the type of decision the discretionary function exception is designed to shield. Whitley v. Albers, 475 U.S. 312, 321-322 (1986) (citing Rhodes v. Chapman, 452 U.S. 337, 349 n. 14 (1981)); Byrd, 2010 WL

8

4922519, * 5; see Alfrey v. United States, 276 F.3d 557, 564 (9th Cir. 2002). Moreover, circuit

courts, generally, have held that FTCA actions filed by federal inmates for injuries caused by fellow

inmates are barred by the discretionary function exception. See Alfrey, 276 F.3d at 565 (applying

discretionary function exception where BOP officials decided not to relocate inmate in face of death

threats by his cell mate and inmate subsequently was killed); Cohen v. United States, 151 F.3d 1338,

1342-43 (11th Cir. 1998); Dykstra v. United States Bureau of Prisons, 140 F.3d 791 (8th Cir. 1998)

(discretionary function exception applied to bar suit for prison officials' failure to warn plaintiff that

his youthful appearance may make him vulnerable to attack or to place him in protective custody

when plaintiff complained that fellow inmate was staring at him); see also McGhee v. United States,

No. 09-CT-3192-BO, 2011 WL 474413, *5-6 (E.D.N.C. Feb. 4, 2011).

Based upon the foregoing, the court finds that both prongs of the discretionary function test

are satisfied. Thus, the discretionary function exception applies, and this portion of FTCA claim is

dismissed for lack of subject matter jurisdiction.

        b.      Failure to Intervene

Plaintiff argues that the prison staff acted with negligence when they waited until they saw

blood to intervene in the assault by inmate Harvey. Beginning with the first part of the discretionary

function test, the court again recognizes that the BOP has a statutory duty to provide for the

"protection" and "safekeeping" of its inmates. 18 U.S.C. § 4042(a)(2) and (a)(3). As for the use of

force against inmates, BOP regulations provide that staff are authorized "to use force only as a last

alternative after all other reasonable efforts to resolve a situation have failed" and may only use "that

amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates,

staff, and others, to prevent serious property damage and to ensure institution security and good

9

order." 28 C.F.R § 552.20. Additionally, 28 C.F.R. § 552.21(a) provides: "Staff may immediately use force and/or apply restraints when the behavior described in § 552.20 constitutes an immediate, serious threat to the inmate, staff, others, property, or to institution security and good order." Because BOP employees are allowed discretion in how they provide for the protection and safekeeping of inmates, the first prong of the discretionary function test is satisfied. See, e.g., Davis v. United States, No. 7:10CV00005, 2010 WL 2754321, at *6 (W.D. Va. July 12, 2010).

The court next turns to the second prong of the discretionary function test. The decision about when and how to intervene in an altercation between two inmates is a policy-related determination. See Davis, 2010 WL 2754321, at *7 (citing Cohen, 151 F.3d at 1344); Bell, 441 U.S. at 527 ("[P]rison administrators . . . should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Here, to the extent the officers' delayed in responding to the altercation between plaintiff and inmate Harvey, such delay is consistent with the BOP's regulations regarding the use of force. There is no requirement that an officer immediately intervene in an altercation among inmates. Instead, officers are permitted the discretion to determine the appropriate moment to intervene in consideration of their own safety, the safety of other inmates, and the restoration of order. This discretion furthers the public policy considerations behind the BOP regulations governing the use of force. Based upon the foregoing, the court finds that both prongs of the discretionary function test are satisfied, and that the discretionary function exception applies to this claim.

10

c.    Negligent Placement

Plaintiff alleges that prison officials acted with negligence when they assigned inmate Harvey to LSCI in light of his known mental health issues and propensity for violence.  The court first turns to the question of whether prison officials are provided discretion in determining how to classify and house inmates. Title 18 U.S.C. § 4081, provides, in pertinent part, that inmates should be classified "according to the nature of the offense committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualize system of discipline, care, and treatment of the persons committed to [Federal penal and correctional] institutions." Additionally, 18 U.S.C. § 3621, allows the BOP the discretion to "designate the place of [a] prisoner's imprisonment." In determining what designation is appropriate and suitable for an inmate, the BOP considers, inter alia, the following: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offenses; and (3) the history and characteristics of the inmate. Id. The BOP is afforded the discretion to transfer an inmate from one penal or correctional facility to another at any time. Id. Further, BOP program statement 5100.08 allows the BOP to use "professional judgment" in determining an inmate's classification. BOP Program Statement 5100.08 Ch. 6, p. 2, Inmate Security Designation and Custody Classification.

Upon a review of the applicable statutes, the court finds that the decision of an inmate's classification and housing status is within the sole discretion of the BOP. See Cook v. United States, No. 0:11-2669-RMG-PJG, 2012 WL 5398184, at *3-4 (D.S.C. Oct. 3, 2012); Irvin v. Owens, No. 9:10-01336-RMG, 2012 WL 1534787, at *5 (D.S.C. Apr. 30, 2012) (finding federal statutes leave discretion to BOP officials as to classification decisions); United States v. Gomez-Vieyra, 112 F. App'x 521, 524 (7th Cir. 2004); Caudle v. United States, No. 95-1620, 1995 WL 730817, at *1 (7th

11

Cir. Dec. 8, 1995) (citing Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976)). Thus, the first prong of the discretionary function test is satisfied.

Turning to the second prong of the test, although the Fourth Circuit Court of Appeals has not directly addressed the issue, courts in other circuits have determined that inmate classification and designation are susceptible to policy analysis. Cohen, 151 F.3d at 1344 ("[W]e conclude that the BOP's actions in classifying prisoners and placing them in institutions involve conduct or decisions that meet both prerequisites for application of the discretionary function exception.") In making this determination, the Eleventh Circuit in Cohen reasoned that "[d]eciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons." Id. (citation omitted). Other circuits have agreed. See Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 796 (8th Cir. 1998) ("Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors. These factors upon which prison officials base such decisions are inherently grounded in social, political, and economic policy. We have no difficulty in concluding that the discretionary function exception applies to the correctional officer's decision not to place Dykstra in protective custody or to take other protection action."); Calderon v. United States, 123 F.3d 947, 951 (7th Cir. 1997) ("It is clear that balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy."); Santa-Rosa v. United States, 335 F.3d 39, 44 (1st Cir. 2003) (decisions about classifying inmates or assigning them to a particular unit or institution, or about allocation of correctional staff, fall within the discretionary function exception); Patel v.

12

United States, 398 F. App'x 22, 29 (5th Cir. 2010) (finding "decisions regarding the transfers and classifications of prisoners generally fall within the discretionary function exception").

Based upon the foregoing, the court finds that both prongs of the discretionary function test are satisfied. Thus, the discretionary function exception applies, and plaintiff's FTCA claim is dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to amend (DE # 43) is DENIED. The United States' third motion to dismiss (DE # 40) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 27 day of February, 2013.

LOUISE W. FLANAGAN
United States District Judge

13